NO JS-6

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE, MOST RECENT, ADDRESS OF
RECORD, IN THIS ACTION, ON THIS DATE.

DATED: 7/26/94

DEPUTY CLERK

FILED

JUL 2 5 1994

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CLERK U.S. DISTRICT COURT

JUL 2 6 1994

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PRACTICE MANAGEMENT INFORMATION ) CASE NO. CV 94-3107 DT (GHKx)
CORPORATION, a California )
corporation, ) ORDER **DENYING** PMIC'S MOTION FOR
) PRELIMINARY INJUNCTION.
            Plaintiff, )
)
vs. )
)
AMERICAN MEDICAL ASSOCIATION, )
an Illinois non-profit )
corporation )
)
            Defendant. )
_____ )

## Background

This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaration of invalidity and unenforceability of purported copyrights and corresponding copyright registrations.

Plaintiff Practice Management Information Corporation ("PMIC") is a publisher of medical books. Defendant American Medical Association ("AMA") is a non-profit corporation and its business includes publishing, licensing for publication, and selling books used by medical professionals.

... DOCKETED
... MLD COPY PTYS
... MLD NOTICE PTYS
. JS-6

JUL 2 6 1994

043

The AMA claims authorship in a book known as Physician's Current Procedural Terminology ("the CPT") and has obtained one or more United States copyright registrations for the CPT.[1]  The CPT consists largely of a list of thousands of five-digit code numbers, each followed by a description of particular medical procedures performed by physicians.  The code numbers and their accompanying descriptions are listed in numerical order, except that the frequently used code numbers beginning with the digits "99" are listed first.  The CPT also includes an alphabetical index of medical terms to assist the user in finding each listed procedure.  See Motion at 5.

The CPT is used by physicians to obtain reimbursement for their medical services from the federal government, state governments, and private insurers.  The physician finds the most accurate description of the medical service he has performed, locates the corresponding CPT code number, and writes the number on the appropriate reimbursement form.  In addition to code numbers and medical descriptions, the CPT also contains guidelines and definitions which instruct medical professionals how to use the CPT accurately.  The guidelines appear at the beginning of each section of the CPT and are essential for selecting the correct CPT code number.  See Motion at 5-7.

The AMA updates the CPT every year, revising the code numbers, descriptions, definitions, and guidelines.  The AMA publishes and distributes the revised edition of the CPT in the

---

[1]    The CPT, though revised annually, has been in its fourth edition since 1977 and is sometimes referred to as "CPT-4."

fall of each year. The 1995 CPT is scheduled for release in October 1994. See Motion at 7.

The Health Care Financing Administration ("HCFA") is an agency of the United States government within the United States Department of Health and Human Services ("HHS"). The HCFA is responsible for administering the financial reimbursement of hospitals, physicians, and other health-care professionals for medical services performed under the federally funded Medicare and Medicaid programs. See 42 Fed. Reg. 13262 (March 9, 1977). In particular, HCFA is charged with developing a uniform coding system for medical procedures to be used for reimbursement in all HCFA-administered programs. See 42 U.S.C. § 1395w-4(c)(5). This system is commonly known as the HCFA Common Procedure Coding System or "HCPCS." See Motion at 7.

On February 1, 1983, HCFA entered into an Agreement with the AMA. Under the Agreement, the AMA granted HCFA a royalty-free, irrevocable license to use, copy, publish, and distribute the CPT coding system. See DeVault Decl., Ex. 8, ¶ 3(a). In exchange for this royalty-free license, HCFA promised to use its regulatory powers as a federal agency to "require the use of CPT-4 . . . in programs administered by HCFA by its agents and other entities participating in those programs." Id. at ¶ 2(b). HCFA also promised "not to use any other system of procedure nomenclature for reporting physicians' services." Id. at ¶ 1. Finally, the Agreement requires HCFA to include a copyright notice whenever it reprints the CPT. Id. at ¶ 3(c). That notice is specifically designed to inform the public that only the AMA

may reproduce the federally mandated CPT system. See Motion at 8.

HCFA, other federal agencies, and the United States Congress have incorporated the CPT into federal law. These statutes and regulations mandate the use of the CPT coding system for obtaining reimbursement from the federal and state governments for medical services. See Motion at 9.

For example, HCFA requires all states which receive federal funding for their Medicaid programs to adopt the CPT as the exclusive coding system to be used by all Medicaid health-care providers. See 42 C.F.R § 433.112(b)(2); State Medicaid Manual, Part 11, Section 11300 (App. K). See also Medicaid Management Information Systems Requirements for Physician and Supplier Services, 50 Fed. Reg. 40895, 40898 (October 7, 1985) (adopting this requirement) (App. C). Similarly, the Department of Labor requires all health-care providers treating patients under the Federal Employees' Compensation Act to identify their services using only the CPT coding system. See 20 C.F.R. § 10.411. See also 51 Fed. Reg. 8280 (March 10, 1986) (adopting this requirement) (App. D).

Congress also mandates use of the CPT. Section 9343(g) of the Omnibus Budget Reconciliation Act of 1986 requires that all hospitals, "as a condition of payment for outpatient hospital services" under Medicare Part B, to use the CPT to report their services. Pub. L. No. 99-509, § 9343(g), 100 Stat. 2040 (reprinted as a note following 42 U.S.C.S. § 1395u) (App. E).

4

Moreover, HCFA annually publishes a complete list of the CPT code numbers in the <u>Federal Register</u>. Each code number, is listed in numerical order and is accompanied by an abbreviated description of the medical service which the code number designates, and a table of numbers which are used to calculate the reimbursement that health-care professionals will receive for performing the listed medical services.

Finally, HCFA publishes a series of manuals, including the <u>Medicare Intermediary Manual</u> and the <u>State Medicaid Manual</u>, which provide instructions to the institutions that process claims under Medicare and Medicaid. <u>See</u> 53 Fed. Reg. 21730 (June 9, 1988). These manuals each require the processing institutions to accept reimbursement applications which identify medical services using CPT code numbers.

PMIC alleges that, notwithstanding the government's adoption of the CPT, HCFA refuses to provide the public with copies of the federally mandated CPT code book. HCFA has printed its own copies of the CPT but, according to PMIC, these copies are strictly for internal use by HCFA pursuant to its Agreement with the AMA.

For the past several years, PMIC has been reselling the CPT as printed by the AMA and currently resells more CPT books than anyone else. However, according to PMIC, the quality of the CPT has been declining annually, and the 1995 CPT published by the AMA will be the worst yet. The AMA has announced that it will, for the first time, increase the size of its book from 6" x 9" to 8.5" x 11". PMIC claims that its customers overwhelmingly prefer

the traditional 6" x 9" format.  This preference has allegedly led PMIC to standardize its entire line of medical coding books in the 6" x 9" format and the sales of those books have been extraordinary.

PMIC contends that it cannot afford to market the AMA's new, but inferior CPT without offering its customers a higher quality 6" x 9" book.  According to PMIC, the poor quality of the AMA's past editions of the CPT has hurt PMIC's reputation as a publisher of high quality books.  Though PMIC is only a distributor, not a publisher of the CPT, PMIC alleges that its customers have blamed PMIC for the poor quality of the CPT book.  In addition to this reputational harm, PMIC claims that every year that it waits to publish its own CPT, it loses over $2,000,000 in lost profits.

On May 12, 1994, PMIC instituted this action by filing a Complaint for Declaration of Copyright Invalidity and Unenforceability.  PMIC alleges that the AMA's purported copyrights in the CPT are invalid and void because the CPT has been incorporated into federal law and therefore fall outside the scope of copyright protection.  PMIC further alleges that the CPT lacks any original and creative work of authorship and are therefore not copyrightable.  Additionally, PMIC claims that by entering into the Agreement with HCFA, the AMA has improperly extended its purported copyright to improperly monopolize the medical procedure coding book industry.

On June 24, 1994, PMIC filed a Motion for Preliminary Injunction.  PMIC seeks to enjoin the AMA from enforcing its

alleged copyright in those elements of the CPT which have become federal law, namely the code numbers, medical descriptions, guidelines, and definitions, against PMIC until this case is decided on its merits.  PMIC claims that it is seeking injunctive relief out of necessity before it further commits to the publication of its own CPT.  PMIC allegedly must begin accepting customer orders for the CPT almost immediately and will soon be investing hundreds of thousands of dollars in its publication. According to PMIC, it needs to know that the AMA cannot obtain judicial intervention preventing PMIC from publishing the CPT during the heart of the upcoming selling season this fall.

PMIC's Motion for Preliminary Injunction is now before this Court.

**Discussion**

**A.   Standard**

In order to obtain a preliminary injunction, a plaintiff must demonstrate "either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits [are] raised and the balance of hardships tips sharply in its favor."  Johnson Controls, Inc. v. Phoenix Sys., Inc., 886 F.2d 1173, 1174 (9th Cir. 1989); Dumas v. Gommerman, 865 F.2d 1093, 1095 (9th Cir. 1989); Benda v. Grand Lodge, 584 F.2d 308, 314-315 (the Cir. 1978), cert. dismissed, 441 U.S. 937 (1979).  In addition, "where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff."  Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).

**B.   PMIC's Motion for Preliminary Injunction**

In the instant motion, PMIC argues that the AMA's purported copyright in the CPT is clearly invalid, and that it has been misused by the AMA.  Moreover, if the AMA obtains judicial intervention preventing PMIC from publishing its own CPT, PMIC claims that it will suffer serious irreparable harm.  Therefore, PMIC requests that this Court enjoin the AMA from enforcing its alleged copyright in the CPT against PMIC until the instant action is decided on its merits.  As will be discussed below, PMIC has failed to adequately demonstrate either a likelihood of success on the merits or the possibility of irreparable harm and is therefore not entitled to the requested injunctive relief.

**1.   Likelihood of Success on the Merits.**

PMIC sets forth four distinct reasons in support of its position that it is likely to succeed on the merits of its claim for declaration of copyright invalidity and unenforceability. This Court will address each of these arguments in turn.

**a.   PMIC has failed to adequately demonstrate that the CPT is invalid because it is a part of the laws of the United States.**

It is well settled that no one can obtain a valid copyright in any statute, regulation, or judicial opinion.  See Motion at 16-17, citing e.g. Banks v. Manchester, 128 U.S. 244, 253-54 (1888).  According to PMIC, there is no exception to this rule, even where the law was first drafted by private individuals.  See Motion at 18-20, citing Building Officials & Code Adm'rs v. Code Technology, Inc., 628 F.2d 730, 733-34 (1st Cir. 1980)

(hereinafter "BOCA"); NADA Servs. Corp. v. CCC Info. Servs., Inc., 1991 U.S. Dist. LEXIS 18874 at *9-13 (N.D. Ill. 1991) (App. A). PMIC maintains that the CPT has been incorporated into federal law by numerous statutes and regulations implementing several governmental health programs and that, even though the CPT was originally drafted by the AMA, a private entity, the CPT is free for all to publish.

The AMA vehemently opposes PMIC's contentions and claims that the AMA has not lost its copyright in the CPT by virtue of its use in federal programs. Specifically, the AMA argues that PMIC's position is contrary to the express language of Section 105 of the Copyright Act of 1976 as well as its legislative history. The AMA then attempts to distinguish the cases relied upon by PMIC and asserts that PMIC's position is, in fact, contradicted by relevant decisional law. Finally, the AMA contends that PMIC's principal argument should be rejected because adoption of this argument would raise serious questions concerning the constitutionality of the Copyright Act.

PMIC's argument that the CPT fits within the ordinary definition of law and is thus not copyrightable is not without force. As PMIC points out, the CPT is a comprehensive list of codes which by law must be utilized in order for a physician to obtain reimbursement under Medicare, Medicaid, and the Federal Employees' Compensation Act ("FECA"). Both logic and common sense support PMIC's position that by incorporating the CPT into various federal laws the government removed the essential elements of the CPT from the purview of the copyright laws.

Additionally, in its Reply, PMIC convincingly attacks the AMA's reliance on Section 105 of the Copyright Act of 1976 and distinguishes some of the cases cited by the AMA in its Opposition.

Yet, despite the persuasiveness of PMIC's contentions, PMIC has failed to adequately address several potential problems with its position. Specifically, PMIC has failed to sufficiently rebut the AMA's takings argument. As the AMA points out, "[a]n interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution." See Opposition at 14-15; Roth v. Pritikin, 710 F.2d 934, 939 (2d. Cir.), cert. denied, 493 U.S. 961 (1983). This Court is unwilling to hold, at this time, that the AMA somehow waived its property rights in the CPT by encouraging the government to adopt the CPT as the industry standard for obtaining reimbursement for various medical procedures.

This Court's unwillingness to find such a waiver is further supported by the historically limited nature of the exception to copyright protection for statutes and opinions. As stated by the court in Rand McNally & Co. v. Fleet Mgmnt. Sys., Inc., 591 F.Supp. 726, 736 (N.D. Ill. 1983), "The law in this area is old and well settled. It has remained limited to statutes and opinions promulgated by government and officials for general application. No great expansions in scope have occurred since the major decisions of the late 1890's." Id. at 736.

Moreover, the courts have been "reluctant to cabin the discretion of government agencies to arrange ownership and

publication rights with private contractors absent some reasonable showing of a congressional desire to do so." Schnapper v. Foley, 667 F.2d 102, 108-09 (D.C. Cir. 1981), cert. denied, 455 U.S. 948 (1982).  In the instant case, the record presently before this Court does not reveal any congressional desire to remove the CPT from the realm of copyrightable material.  On the contrary, in its Agreement with the federal government, the AMA expressly reserved for itself the exclusive right to reproduce the CPT.

Finally, this Court is mindful of the potentially harmful effects which would result from adoption of PMIC's position.  Any decision that privately drafted manuals such as the CPT, once incorporated into federal law, lose the protection of the copyright laws would be "destructive of the copyright interest in encouraging creativity in connection with the increasing trend toward state and federal adoptions of model codes."  1 Nimmer on Copyright § 5.06[C], at 5-60 (1993).

In summary, although PMIC has set forth a valid claim, PMIC has not persuaded this Court that it will necessarily prevail on the merits.[2]  In light of PMIC's weak showing of irreparable

---

[2]    PMIC heavily relies on the BOCA and NADA cases in arguing that it will likely succeed on the merits.  Indeed, these cases lend support for PMIC's position.  However, neither of the cases are directly on point.  In BOCA, the court vacated a preliminary injunction obtained by a private association seeking to enforce a copyright in the official building code of the Commonwealth of Massachusetts.  The court stopped short of holding the copyright invalid, but remanded the case for further factual development. Similarly, in NADA, the owner and publisher of a used car guide which was indispensable to compliance with various statutes sought preliminary injunctive relief.  Again, the court did not hold the copyright invalid but merely refused to issue an injunction.

harm, discussed below in Section B.2, this Court is unwilling to grant PMIC's request for injunctive relief at this time.

> **b.**  **PMIC has failed to adequately demonstrate that the CPT System is uncopyrightable under the Copyright Act.**

The Copyright Act of 1976 provides:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).

PMIC acknowledges the AMA's right to enjoy copyright protection in the extraneous expression included in the CPT book it publishes.  However, PMIC argues that the "necessary components" of the CPT, namely the code numbers, medical descriptions, definitions and guidelines, constitute a "system" or "method" for obtaining government reimbursement for health care and that these portions are therefore not copyrightable.

The AMA, on the other hand, asserts that Congress and HHS have developed a "system" of government reimbursement for health care and that the CPT is simply a manual of nomenclature that HHS has chosen to require providers to use if they wish to participate in that system.  The AMA points to Sections 102(a)

---

Morevoer, both BOCA and NADA involved slightly different facts and neither case addresses the concerns raised by this Court.

and 103 of the Copyright Act which extends protection to "original works of authorship" including "literary works" (Section 102(a)(1)) and to "compilations and derivative works" (Section 103). According to the AMA, the CPT clearly possesses the requisite originality and is entitled to protection under each of these sections.

Review of the CPT convinces this Court the CPT is sufficiently original to entitle it to copyright protection. As the AMA points out in its Opposition, a manual such as the CPT is the product of numerous judgments about the nature, scope and classification of medical procedures. Thus, the drafting of the CPT involves a much greater degree of creativity than those types of works considered insufficiently original to warrant copyright protection. See Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345-46 (1991) (holding an alphabetized compilation of telephone subscribers insufficiently original to warrant copyright protection.)

In this Court's opinion, PMIC has failed to adequately demonstrate likely success on the merits based on its position that the CPT is a "system" falling outside the scope of copyright protection.

    c.   **PMIC has failed to demonstrate that the CPT is uncopyrightable under the "merger doctrine."**

A fundamental principle underlying copyright law is that "copyright protects only an author's expression of an idea and not the idea itself." See Motion at 22-24; Landsberg v. Scrabble

Crossword Game Players, Inc., 736 F.2d 485, 488 (9th Cir.), cert. denied, 469 U.S. 1037 (1984). The merger doctrine applies when the idea underlying a work can be expressed only in one way or in a very limited number of ways. See Motion at 23, citing e.g. Bellsouth Advertising & Pub. Corp. v. Donnelly Info. Pub., Inc., 999 F.2d 1436, 1442 (11th Cir.) (en banc), cert. denied, 114 S.Ct. 943 (1993). Moreover, according to PMIC, external factors, such as the creation of an industry standard, may limit the number of ways the facts and ideas in the work can be expressed and thus cause a merger. See Motion at 23, citing e.g. Sega Enter., Ltd. v. Accolade, 977 F.2d 1510, 1524 (9th Cir. 1992).

According to PMIC, in order that a doctor obtain reimbursement under Medicare and Medicaid for a particular procedure he or she is required by law to use the code numbers and descriptions of the CPT. Thus, PMIC argues that the idea of a coding system for obtaining reimbursement from the federal government, and the expression of the idea in the CPT have merged and the CPT is not protectable by copyright.

This Court is unpersuaded by PMIC's argument. As the AMA points out in their Opposition, although expression is unprotected when it represents the only means of expressing a particular idea, this doctrine is limited to cases where "a given idea is inseparably tied to a particular expression." See Opposition at 17-18; 3 Nimmer on Copyright § 13.03[B][3], at 13-17. The CPT does not represent the only method for describing

14

medical procedures and the merger doctrine is therefore not applicable in the instant case.[3]

In this Court's opinion, PMIC has failed to make an adequate showing that the CPT is not entitled to copyright protection under the merger doctrine.

### d.   PMIC has failed to make a sufficient showing of copyright misuse.

In Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990), the court stated that the doctrine of copyright misuse "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." Lasercomb, 911 F.2d at 977. According to PMIC, the AMA has misused its copyright to obtain an improper monopoly that contravenes public policy, and therefore PMIC is likely to prevail on the merits of its Declaratory Judgment claim.

In Lasercomb, the moving party claimed that Lasercomb had misused its copyright by including in its standard licensing agreement clauses which prevented the licensee from participating in any manner in the creation of competing software for a period of 99 years. Id. at 978. In the instant case, however, there is

-----

[3]   PMIC's merger doctrine argument relies heavily on the Accolade case. In Accolade the Ninth Circuit noted, "To the extent that a work is functional or factual, it may be copied, [citation omitted] as may those expressive elements of the work that 'must necessarily be used as incident to' expression of the underlying ideas, functional concepts, or facts." Id. at 1524. Nothing in the opinion indicates to this Court that the merger doctrine is applicable in a situation such as this, where a particular idea may be expressed in many different ways.

insufficient evidence that the AMA engaged in similar anti-competitive conduct.

In its Agreement with the AMA, HCFA agrees to require the use of the CPT by all doctors and hospitals participating in Medicare and Medicaid.  However, if the HCFA ever decides that use of the CPT is no longer in the public interest, it remains free to cancel the Agreement upon 90 days notice.  Presumably, the HCFA would then be free to contract with the author of a competing manual of medical service nomenclature.

In this Court's opinion, PMIC has failed to adequately demonstrate the likely success of its claim based on copyright misuse.

**2.    Irreparable Harm and Balance of Hardships.**

Unless this Court grants its requested relief, PMIC claims that it will be irreparably harmed by the AMA's delayed enforcement of any copyright in the CPT and that the balance of hardships tips sharply in its favor.  PMIC asserts that its reputation as a reliable provider of quality books will suffer greatly, as it did in a similar situation two years ago, if it is enjoined from selling its CPT book after accepting orders from customers for that book.  Moreover, PMIC alleges lost profits of over $2,000,000 in each year it waits to publish its own CPT. According to PMIC, the AMA's decision to delay until October, and then strike when it will hurt PMIC the most, unfairly forces PMIC to choose between the incurrence of potential liability for infringement and the abandonment of its enterprise.

At the same time, PMIC argues that the potential harm to the AMA if PMIC is permitted to print its book would be minimal and that the posting of a bond would adequately protect the interests of the AMA should it prevail on the merits.

The AMA contends that PMIC has failed to adequately demonstrate the possibility of irreparable harm and attacks PMIC's arguments on several fronts. First, the AMA attacks PMIC's request for injunctive relief as procedurally unsound. According to the AMA, injunctive relief against threatened legal action is inappropriate where the party seeking such relief will have an adequate opportunity to fully present his defenses and objections at the subsequent legal proceedings. See Opposition at 25-26. Moreover, the AMA contends that PMIC's reputation can only be harmed if the AMA successfully sues for infringement. According to the AMA, the possibility that the AMA will ultimately prevail in its infringement claim does not justify the imposition of a temporary injunction preventing the AMA from asserting such a claim.

This Court agrees with the AMA and finds that PMIC has failed to adequately demonstrate the possibility of irreparable harm. Although PMIC argues at length about potential harm to its reputation, this Court believes that PMIC will suffer harm only if PMIC's own CPT is ultimately found to infringe the AMA's CPT. PMIC's real reason for seeking a preliminary injunction is its desire to reap millions in profits from the sale of its own CPT without risk. Injunctive relief is not appropriate to protect a party's right to enter a new market and earn large profits. In

17

this Court's opinion, any possible harm to PMIC will be adequately compensated by an award of money damages.

More importantly, the preliminary injunction sought by PMIC is entirely improper. PMIC openly admits that its sole purpose in seeking an injunction is to prevent the AMA from later seeking judicial relief and ultimately enjoining PMIC from publishing its own CPT. Enjoining the AMA from seeking future judicial relief is inappropriate and PMIC has not cited any authority which would support the issuance of an injunction of this nature.

Moreover, in order to obtain an injunction against PMIC, the AMA will be forced to request injunctive relief from this Court. If the AMA does in fact decide to seek such relief, the AMA will be forced to make the same showing as that required of PMIC, namely that the AMA is likely to prevail on the merits of its infringement claim and that, absent injunctive relief, it will suffer irreparable harm. The risk of an improperly issued injunction is therefore minimal.

Finally, this Court addresses PMIC's concern that the AMA's legal strategy unfairly forces PMIC to make a "Hobson's Choice" between printing its own CPT at the risk of incurring substantial financial liability, and deciding not to print the book thereby conceding to the AMA the copyright protection to which it is not entitled. As the AMA points out, the 1995 version of the CPT does not yet exist, and thus the AMA has no copyright to enforce. At the same time, PMIC has yet to publish its own allegedly CPT thus making any action for infringement by the AMA impossible as of this date.

18

In summary, this Court is of the opinion that PMIC's request for injunctive relief is improper.  This Court further finds that PMIC has failed to demonstrate any threat of irreparable harm.  Thus, despite the forcefulness of its arguments regarding the merits of its claim, this Court is unwilling to grant PMIC's request for preliminary injunctive relief.

### 3.  The Public Interest.

Finally, PMIC argues that the granting of the requested preliminary injunction would be in the public's best interest.  Discussion of the public interest is unnecessary since this Court has already determined that PMIC has failed to adequately demonstrate likelihood of success or irreparable harm.  Nevertheless, this Court will address PMIC's arguments in this regard.

According to PMIC, granting the requested relief would encourage others to enter the market and sell competing editions of their own CPT for a cheaper price.  Additionally, PMIC claims that the existence of a single supplier of the CPT means that our nation's health-care system must depend entirely on the well-being of the AMA.  If for some reason the AMA is unable to print and supply the CPT in a timely fashion, PMIC claims that the nation's health-care suppliers would suffer unfair and unnecessary delays in receiving reimbursement for their medical services.

The AMA, on the other hand, maintains that the issuance of an injunction would seriously undermine the primary purpose of the Copyright Act by eroding the incentive of the AMA and others

to produce such a work, and by destroying the competition that helped produce the CPT in the first place and continues to promote its high quality today.

Copyright and patent laws are "intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." Sony Corp. of Amer. v. Universal City Studios, Inc. 464 U.S. 417, 429-30 (1984). In this Court's opinion, issuing the requested preliminary injunction would subvert these purposes. While PMIC would obviously profit if this Court were to grant the requested preliminary injunction, this Court is not convinced that the public interest would experience similar benefits.

This Court need not address the AMA's contention that PMIC has forfeited any right to equitable relief under the doctrine of unclean hands.

## C. Conclusion

This Court acknowledges that preliminary injunctive relief is available to the plaintiff in an action for declaratory relief upon a proper showing. See Doran v. Salem Inn, Inc., 42 U.S. 922, 931 (1975). However, in this Court's opinion, PMIC has not demonstrated that such relief is appropriate in this case. Accordingly, this Court hereby **DENIES** PMIC's Motion for Preliminary Injunction.[4]

IT IS SO ORDERED.

DATED: July 25, 1994

Dickran Tevrizian, Judge
United States District Court

---

[4] In its Reply, PMIC argues that the parties' briefs demonstrate that there are no factual issues to be decided on PMIC's copyright invalidity claim. Accordingly, PMIC asks that this Court enter final judgment on the merits of its copyright invalidity claim now. This Court is unwilling to issue final judgment at this time. Although the parties' briefs address the merits of PMIC's claim, both sets of moving papers deal primarily with the propriety of preliminary injunctive relief. A final decision based upon the present record would be premature.