JUDGMENT.

========================================================================



UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

- - - - - - - - - - - - - -

NO. 94-56774
CT/AG#: CV-94-03107-DT

PRACTICE MANAGEMENT INFORMATION CORPORATION, a California
corporation

Plaintiff - Appellant

v.

THE AMERICAN MEDICAL ASSOCIATION, an Illinois nonprofit
corporation

Defendant - Appellee

- - - - - - - - - - - - - - - - - - -

APPEAL FROM the United States District Court for the

Central District of California, Los Angeles .

THIS CAUSE came on to be heard on the Transcript of the

Record from the United States District Court for the

Central District of California, Los Angeles

and was duly submitted.


ON CONSIDERATION WHEREOF, It is now here ordered and

adjudged by this Court, that the judgment of the said

District Court in this cause be, and hereby is

AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANED. Each party

shall bear their own costs on appeal.

Filed and entered          August 6, 1997
**AMENDED**                **January 9, 1998**



FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN - 9 1998

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

PRACTICE MANAGEMENT INFORMATION CORPORATION, a California Corporation,

        Plaintiff-Appellant,

        v.

THE AMERICAN MEDICAL ASSOCIATION, an Illinois nonprofit corporation,

        Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 94-56774

D.C. No. CV-94-03107-DT

ORDER AMENDING OPINION

Filed January 9, 1998

Before:  BROWNING, and REINHARDT, Circuit Judges

        The opinion filed on August 6, 1997 is amended as follows:

        (1) The second sentence in the last paragraph of Section III is stricken, and the third sentence is amended to read: "Because the AMA did not lobby HCFA to adopt the CPT, the AMA's First Amendment right to petition the government is not at stake."  121 F.3d 516, 521 (9th Cir. 1997).

        (2) The words "on its copyright misuse claim" are added to the last sentence of the opinion.  121 F.3d at 521.



FILED

NOV - 1 1999

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY         DEPUTY

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| PRACTICE MANAGEMENT INFORMATION CORPORATION, a California Corporation, *Plaintiff-Appellant,* v. THE AMERICAN MEDICAL ASSOCIATION, an Illinois nonprofit corporation, *Defendant-Appellee.* | No. 94-56774 D.C. No. CV-94-03107-DT ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted August 7, 1995
Submission Vacated June 18, 1996
Resubmitted September 13, 1996
Pasadena, California

Filed August 6, 1997
Amended January 9, 1998

Before: James R. Browning, William A. Norris, and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge Browning

## SUMMARY

### Intellectual Property/Copyright

The court of appeals vacated a judgment of the district court in part, affirmed in part, and reversed in part. The court

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY BARCLAYS / ELECTROGRAPHIC—SAN FRANCISCO—(800) 888-3600

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 1997 by Barclays Law Publishers

held that a copyrighted medical procedure code does not become "law" and enter the public domain when it is adopted by a federal agency for general use by its employees and organizations with which it deals.

Appellee American Medical Association (AMA) claims the copyright on *Physician's Current Procedural Terminology* (CPT), a standard reference work used by doctors. The CPT contains thousands of medical procedures, each with a five-digit code used to locate it, and a brief description.

Under federal law, the Health Care Financing Administration (HCFA) was required to establish a uniform code for identifying physicians' services for use in completing Medicare and Medicaid claim forms. HCFA contracted with AMA to adopt and use the CPT. AMA gave HCFA a free license to use the CPT in exchange for HCFA's agreement not to use any other system of procedure nomenclature, and to require its use in programs it administered. HCFA published regulations requiring applicants for Medicaid reimbursement to use the CPT.

Appellant Practice Management Information Corp. (PMI) is a publisher of medical books. PMI brought a federal declaratory action, alleging that the CPT became uncopyrightable because it became "law" and entered the public domain when HCFA adopted the regulation mandating use of CPT code numbers in Medicaid reimbursement claims, and that AMA abused its copyright by entering into the agreement with HCFA that required HCFA's and providers' use of the CPT to the exclusion of any other code.

The district court granted partial summary judgment for AMA and enjoined PMI from publishing the CPT. PMI appealed.

[1] PMI's argument that CPT became law and entered the public domain when HCFA by regulation required its use

competitors' products constituted a misuse of the copyright by the AMA.

[8] The adverse effects of the licensing agreement are apparent. The terms under which the AMA agreed to license use of the CPT to HCFA gave the AMA a substantial and unfair advantage over its competitors. By agreeing to license the CPT in this manner, the AMA used its copyright "in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb*, 911 F.2d at 977.

[9] The AMA argues the copyright misuse defense fails because Practice Management did not establish an antitrust violation. We agree with the Fourth Circuit that a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense. *See Lasercomb*, 911 F.2d at 978.

[10] We also reject the AMA's argument that the *Noerr-Pennington* doctrine immunized its actions. Because the AMA did not lobby HCFA to adopt the CPT, the AMA's First Amendment right to petition the government is not at stake.

### IV.

We affirm the district court's ruling that the AMA did not lose its copyright when use of the CPT was required by government regulations, but reverse the ruling with respect to copyright misuse. We hold that Practice Management established its misuse defense as a matter of law, vacate the preliminary injunction, and remand for entry of judgment in favor of Practice Management on its copyright misuse claim.

**AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED.**

**Each party shall bear their own costs.**

rested on *Banks v. Manchester*, 128 U.S. 244 (1888), which held that judicial opinions are uncopyrightable. *Banks* rested on two grounds, neither of which would have justified invalidation of AMA's copyright. [2] The first ground was that the public owns the opinions because it pays the judges' salaries. The second was that as a matter of public policy, the judges' work constitutes the authentic exposition and interpretation of the law, which is free for publication to all.

[3] The first ground was not applicable to the CPT. The copyright system was not significant in *Banks* because judges had no proprietary interest in their opinions. The copyright system was of central importance in this case because AMA authored, owned, maintained, and claimed a copyright in the CPT.

[4] The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyright holders was not at stake in *Banks* because judges' salaries provided adequate incentive to write opinions. Copyrightability of the CPT provided the economic incentive for AMA to produce and maintain the CPT. To vitiate copyright in such circumstances could have proved destructive of the copyright interest in encouraging creativity, a matter of significance in this context because of the increasing trend toward state and federal adoption of model codes. Invalidating its copyright on the ground that the CPT entered the public domain would have exposed copyrights of privately authored model codes, statutes, standards, and reference works to invalidation. Organizations that develop these codes and standards warned that they would be unable to continue to do so if they entered the public domain when adopted by a public agency.

[5] The second requirement—the due process requirement of free access to the law—may have been relevant, but did not justify termination of AMA's copyright. There was no evidence that anyone wishing to use the CPT had any difficulty obtaining access to it. PMI was not a potential user denied

access, but a putative copier wishing to share in AMA's statutory monopoly. PMI did not assert that AMA restricted access to users or intended to do so. [6] AMA's right under the Copyright Act to limit or forgo publication of the CPT posed no realistic threat to pubic access. AMA had no incentive to limit or forego publication.

[7] AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system. Although HCFA had nothing to gain from the exclusivity provision, which side urged its inclusion was of no consequence. The controlling fact was that HCFA was prohibited from using any other coding system. What offended the copyright misuse doctrine was not HCFA's decision to use AMA's coding system exclusively, but the limitation on HCFA's right to decide whether or not to use other forms as well.

[8] The terms under which AMA agreed to license use of the CPT to HCFA gave AMA a substantial and unfair advantage over its competitors. AMA used its copyright in a manner violative of the public policy embodied in the grant of a copyright.

[9] A defendant in a copyright infringement suit need not prove an antitrust violation to prevail in a copyright misuse defense. Because PMI did not have to establish an antitrust violation, it was unnecessary to consider AMA's antitrust defenses. [10] Because AMA did not lobby HCFA to adopt the CPT, AMA's First Amendment right to petition the government was not at stake.

## COUNSEL

Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, California, for the plaintiff-appellant.

We have implied in prior decisions that misuse is a defense to copyright infringement. *See Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986). We now adopt that rule.

[7] On the undisputed facts in the record before us, we conclude the AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system. The AMA argues it did not insist HCFA use only the CPT; rather, HCFA decided to use a single code to take advantage of natural efficiencies. However, the plain language of the AMA's licensing agreement requires HCFA to use the AMA's copyrighted coding system and prohibits HCFA from using any other. The exclusivity requirement is a part of the consideration in exchange for which the AMA agreed to grant HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. Although HCFA apparently had nothing to gain from inclusion of the exclusivity provision, which side urged its inclusion is of no consequence. *Cf. Anchor Serum Co. v. Federal Trade Comm.*, 217 F.2d 867, 870 (7th Cir. 1954) (rejecting argument that exclusive dealing contract did not violate section 3 of the Clayton Act because buyer initiated negotiations and seller did not impose the contract terms on buyer). The controlling fact is that HCFA is prohibited from using any other coding system by virtue of the binding commitment it made to the AMA to use the AMA's copyrighted material exclusively. The absence of the agreement would not preclude HCFA from doing what the AMA suggests would be proper — deciding on its own to use only the AMA's system. What offends the copyright misuse doctrine is not HCFA's decision to use the AMA's coding system exclusively, but the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well. Conditioning the license on HCFA's promise not to use

such a suggestion as antithetical to the interests sought to be advanced by the Copyright Act.

*Id.* at 736.

For the reasons we have stated earlier, as well as those relied upon by the First and Second Circuits, we affirm the district court's conclusion that the AMA's copyright in the CPT should be enforced.[8]

### III.

Practice Management argues that the AMA misused its copyright by negotiating a contract in which HCFA agreed to use the CPT exclusively. *See Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 977-79 (4th Cir. 1990) (defense of copyright misuse "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office"); *see also DSC Communications Corp. v. DGI Techs., Inc.,* 81 F.3d 597, 601 (5th Cir. 1996) (same).[9]

---

[8]Practice Management argues that the CPT is an uncopyrightable industry standard or "idea" under section 102(b) of the Copyright Act, the merger doctrine, and *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1523-24 (9th Cir. 1993) because HCFA mandates use of CPT codes in Medicaid applications. This court has not allowed the owners of copyrights in expressions mandated by industry standards to use their copyrights to stifle independent creative expression in the industry. *Sega,* 977 F.2d at 1523-24. However, the AMA's copyright does not stifle independent creative expression in the medical coding industry. It does not prevent Practice Management or the AMA's competitors from developing comparative or better coding systems and lobbying the federal government and private actors to adopt them. It simply prevents wholesale copying of an existing system.

Practice Management did not appeal the district court's finding that the CPT was sufficiently original to qualify for copyright protection, and we do not review that question.

[9]Copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse. *See Lasercomb,* 911 F.2d at 979 n.22.

Jack Bierig, Sidley & Austin, Chicago, Illinois, for the defendant-appellee.

Maureen Brodoff, National Fire Protection Association, Quincy, Massachusetts, for the amici.

---

### ORDER

The opinion filed on August 6, 1997 is amended as follows:

(1) The second sentence in the last paragraph of Section III is stricken, and the third sentence is amended to read: "Because the AMA did not lobby HCFA to adopt the CPT, the AMA's First Amendment right to petition the government is not at stake." 121 F.3d 516, 521 (9th Cir. 1997).

(2) The words "on its copyright misuse claim" are added to the last sentence of the opinion. 121 F.3d at 521.

---

### OPINION

BROWNING, Circuit Judge:

Practice Management Information Corporation ("Practice Management") appeals from a partial summary judgment and preliminary injunction forbidding it from publishing a medical procedure code copyrighted by the American Medical Association ("the AMA").[1]

### I.

Over thirty years ago, the AMA began the development of

---

[1] We have jurisdiction under 28 U.S.C. § 1292(a)(1). *See MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 516 (9th Cir. 1993).

a coding system to enable physicians and others to identify particular medical procedures with precision. These efforts culminated in the publication of the Physician's Current Procedural Terminology ("the CPT"), on which the AMA claims a copyright.

The current edition of the CPT identifies more than six thousand medical procedures and provides a five-digit code and brief description for each. The CPT is divided into six sections — evaluation, anesthesia, surgery, radiology, pathology, and medicine. Within each section, procedures are arranged to enable the user to locate the code number readily. In the anesthesia section, procedures are grouped according to the body part receiving the anesthetic; in the surgical section, the procedures are grouped according to the body system, such as the digestive or urinary system, on which surgery is performed. The AMA revises the CPT each year to reflect new developments in medical procedures.

In 1977, Congress instructed the Health Care Financing Administration ("HCFA") to establish a uniform code for identifying physicians' services for use in completing Medicare and Medicaid claim forms. *See* 42 U.S.C. § 1395w-4(c)(5). Rather than creating a new code, HCFA contracted with the AMA to "adopt and use" the CPT. Agreement ¶ 1. The AMA gave HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. *Id.* ¶ 3(a). In exchange, HCFA agreed "not to use any other system of procedure nomenclature . . . for reporting physicians' services" and to require use of the CPT in programs administered by HCFA, by its agents, and by other agencies whenever possible. *Id.* ¶¶ 1, 2.[2]

HCFA published notices in the Federal Register incorporat-

---

[2]HCFA had the right to cancel the agreement and use a competing coding system at any time and without penalty on ninety days notice. Agreement ¶ 10.

state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available. Since the rule denying copyright protection to judicial opinions and statutes grew out of a much different set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record, into which testimony and materials shedding light on the policy issues discussed herein may be placed.

*Id.* at 74.

In *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61 (2d Cir. 1994), the Second Circuit declined to invalidate the copyright on a privately prepared listing of automobile values that several states required insurance companies to use in calculating insurance awards:

We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright. While there are indeed policy considerations that support CCC's argument, they are opposed by countervailing considerations. For example, a rule that the adoption of such a reference by a state legislature or administrative body deprived the copyright owner of its property would raise very substantial problems under the Takings Clause of the Constitution. We note also that for generations, state education systems have assigned books under copyright to comply with a mandatory school curriculum. It scarcely extends CCC's argument to require that all such assigned books lose their copyright — as one cannot comply with the legal requirements without using the copyrighted works. Yet we think it unlikely courts would reach this conclusion. Although there is scant authority of CCC's argument, Nimmer's treatise opposes

[6] The AMA's right under the Copyright Act to limit or forgo publication of the CPT poses no realistic threat to public access. The AMA has no incentive to limit or forgo publication. If the AMA were to do so, HCFA would no doubt exercise its right to terminate its agreement with the AMA.[7] Other remedies would also be available, including "fair use" and due process defenses for infringers, *see* 1 Nimmer & Nimmer, *supra*, § 5.06[C], at 5-92, and, perhaps most relevant, mandatory licensing at a reasonable royalty could be required in light of the great public injury that would result if adequate access to the CPT were denied. *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988); *Universal City Studios, Inc. v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir. 1982), *rev'd on other grounds*, 464 U.S. 417 (1984).

The Supreme Court has not considered a case in which the author asserted a proprietary interest in material adopted by the government as law. However, the First and Second Circuits have declined to enjoin enforcement of private copyrights in these circumstances.

In *Building Officials & Code Admin. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980), the district court preliminarily enjoined Code Technology, Inc. from copying a building code copyrighted by Building Officials & Code Administration ("BOCA"), a private, non-profit group, and adopted by the State. The First Circuit reversed. It recognized the problem posed by *Banks*, but nonetheless refrained from holding BOCA's copyright invalid:

> Groups such as BOCA serve an important public function; arguably they do a better job than could the

---

[7] Alternatively, HCFA might by regulation or contract require the AMA to provide greater access. *See* H.R. Rep. No. 94-1476, at 59, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5672; Marvin J. Nodiff, *Copyrightability of Works of the Federal and State Governments Under the 1976 Act*, 29 St. Louis L.J. 91, 104 (1984).

ing the CPT in HCFA's Common Procedure Coding System, *see* 48 Fed. Reg. 16750, 16753 (1983); 50 Fed. Reg. 40895, 40897 (1985), and adopted regulations requiring applicants for Medicaid reimbursement to use the CPT. *See* 42 C.F.R. § 433.112(b)(2) (requiring compliance with Part 11 of the *State Medicaid Manual*, which requires states receiving federal funding for Medicaid to adopt the Administration's Common Procedure Coding System as the exclusive medical procedure coding system).[3]

Practice Management, a publisher and distributor of medical books, purchases copies of the CPT from the AMA for resale. After failing to obtain the volume discount it requested, Practice Management filed this lawsuit seeking a declaratory judgment that the AMA's copyright in the CPT was invalid for two reasons: (1) the CPT became uncopyrightable law when HCFA adopted the regulation mandating use of CPT code numbers in applications for Medicaid reimbursement, and (2) the AMA misused its copyright by entering into the agreement that HCFA would require use of the CPT to the exclusion of any other code. The district court granted partial summary judgment for the AMA and preliminarily enjoined Practice Management from publishing the CPT. Practice Management appeals.

II.

[1] Practice Management's argument that the CPT became law and entered the public domain when HCFA by regulation required its use rests ultimately upon *Banks v. Manchester*, 128 U.S. 244 (1888), which held that judicial opinions are uncopyrightable. *Banks* in turn rests upon two grounds, nei-

---

[3] Other federal agencies require physicians to use the CPT. *See, e.g.*, 20 C.F.R. § 10.411(c) (stating that physicians seeking compensation under the Federal Employees' Compensation Act must identify their services using CPT codes). The state of California has incorporated the CPT into its Code of Regulations. *See* Cal. Code Regs. tit. 22, § 51050.

ther of which would justify invalidation of the AMA's copyright.

[2] The first ground for the *Banks* holding that judicial opinions are not subject to copyright is that the public owns the opinions because it pays the judges' salaries. *Id.* at 253. The second is that as a matter of public policy, "the whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all . . . ." *Id.*

[3] The first ground is clearly not applicable to the CPT. The copyright system was not significant in *Banks* because judges had no proprietary interest in their opinions. The copyright system is of central importance in this case because the AMA authored, owns, and maintains the CPT and claims a copyright in it.

[4] The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyrightholders was not at stake in *Banks* because judges' salaries provided adequate incentive to write opinions. In contrast, copyrightability of the CPT provides the economic incentive for the AMA to produce and maintain the CPT. "To vitiate copyright, in such circumstances, could, without adequate justification, prove destructive of the copyright interest, in encouraging creativity," a matter of particular significance in this context because of "the increasing trend toward state and federal adoptions of model codes." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.06[C], at 5-92 (1996).⁴ As the AMA points out, invalidating its copyright on

---

⁴*See also Building Officials & Code Admin. v. Code Tech., Inc.*, 628 F.2d 730, 736 (1st Cir. 1980) (recognizing "a possible trend towards state and federal adoption, either by means of incorporation by reference or otherwise, of model codes"); 58 Fed. Reg. 57643, 57644-45 (1993) (Office of Management and Budget directed federal agencies to adopt private standards "whenever practicable" in order to "eliminate[ ] the costs to the Government of developing its own standards").

---

the ground that the CPT entered the public domain when HCFA required its use would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation.⁵ Non-profit organizations that develop these model codes and standards warn they will be unable to continue to do so if the codes and standards enter the public domain when adopted by a public agency.⁶

[5] The second consideration underlying *Banks* — the due process requirement of free access to the law — may be relevant but does not justify termination of the AMA's copyright. There is no evidence that anyone wishing to use the CPT has any difficulty obtaining access to it. *See Texas v. West Publ'g Co.*, 882 F.2d 171, 177 (5th Cir. 1989). Practice Management is not a potential user denied access to the CPT, but a putative copier wishing to share in the AMA's statutory monopoly. Practice Management does not assert the AMA has restricted access to users or intends to do so in the future.

---

⁵*See, e.g.*, 32 C.F.R. § 199.13(e)(2) (limiting payment of dental benefits to procedures defined in the Current Dental Terminology); 32 C.F.R. § 199.2 (conditioning payment of civilian medical benefits for mental disorders on showing the patient has a disorder listed in the *Diagnostic & Statistical Manual of Mental Disorders (DSM III)*); 16 C.F.R. § 1505.5(e)(5) (requiring electrically operated toys to have a type SP-2 electrical power cord, as defined in the National Electrical Code authored by the National Fire Protection Association); 16 C.F.R. § 1201.7 (requiring architectural glazing materials to conform to standards published by the American National Standards Institute); 7 C.F.R. § 1755.870(a)(8) (incorporating by reference Underwriters Laboratories Inc.'s Standard Test for Flame Propagation Height of Electrical and Optical-Fiber Cables Installed Vertically in Shafts); 11th Cir. R. 28-2(j) (requiring attorneys to conform their citations to *The Bluebook: A Uniform System of Citation*).

⁶ Amicus briefs have been filed by the American Dental Association, American National Standards Institute, American Society of Association Executives, American Society of Heating, Refrigerating & Air-Conditioning Engineers, American Society of Mechanical Engineers, American Society for Testing and Materials, National Fire Protection Association, and Underwriters Laboratories Inc.

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PRACTICE MANAGEMENT
INFORMATION CORPORATION, a
California Corporation,
*Plaintiff-Appellant,*

v.

THE AMERICAN MEDICAL
ASSOCIATION, an Illinois nonprofit
corporation,
*Defendant-Appellee.*

No. 94-56774

D.C. No.
CV-94-03107-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted August 7, 1995
Submission Vacated June 18, 1996
Resubmitted September 13, 1996
Pasadena, California

Filed August 6, 1997

Before: James R. Browning, William A. Norris, and
Stephen Reinhardt, Circuit Judges

Opinion by Judge Browning

## SUMMARY

### Intellectual Property/Copyright

The court of appeals vacated a judgment of the district court in part, affirmed in part, and reversed in part. The court

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY BARCLAYS / ELECTROGRAPHIC—SAN FRANCISCO—(800) 888-3600

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 1997 by Barclays Law Publishers.

held that a copyrighted medical procedure code does not become "law" and enter the public domain when it is adopted by a federal agency for general use by its employees and organizations with which it deals.

Appellee American Medical Association (AMA) claims the copyright on *Physician's Current Procedural Terminology* (CPT), a standard reference work used by doctors. The CPT contains thousands of medical procedures, each with a five-digit code used to locate it, and a brief description.

Under federal law, the Health Care Financing Administration (HCFA) was required to establish a uniform code for identifying physicians' services for use in completing Medicare and Medicaid claim forms. HCFA contracted with AMA to adopt and use the CPT. AMA gave HCFA a free license to use the CPT in exchange for HCFA's agreement not to use any other system of procedure nomenclature, and to require its use in programs it administered. HCFA published regulations requiring applicants for Medicaid reimbursement to use the CPT.

Appellant Practice Management Information Corp. (PMI) is a publisher of medical books. PMI brought a federal declaratory action, alleging that the CPT became uncopyrightable because it became "law" and entered the public domain when HCFA adopted the regulation mandating use of CPT code numbers in Medicaid reimbursement claims, and that AMA abused its copyright by entering into the agreement with HCFA that required HCFA's and providers' use of the CPT to the exclusion of any other code.

The district court granted partial summary judgment for AMA and enjoined PMI from publishing the CPT. PMI appealed.

[1] PMI's argument that CPT became law and entered the public domain when HCFA by regulation required its use

**[10]** We also reject the AMA's argument that the *Noerr-Pennington* doctrine immunized its actions. Because Practice Management need not establish an antitrust violation, we need not consider the AMA's antitrust defenses. Moreover, because the AMA did not lobby HCFA to adopt the CPT, the AMA's First Amendment right to petition the government is not at stake.

### IV.

We affirm the district court's ruling that the AMA did not lose its copyright when use of the CPT was required by government regulations, but reverse the ruling with respect to copyright misuse. We hold that Practice Management established its misuse defense as a matter of law, vacate the preliminary injunction, and remand for entry of judgment in favor of Practice Management.

AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED.

**Each party shall bear their own costs.**

rested on *Banks v. Manchester*, 128 U.S. 244 (1888), which held that judicial opinions are uncopyrightable. *Banks* rested on two grounds, neither of which would have justified invalidation of AMA's copyright. **[2]** The first ground was that the public owns the opinions because it pays the judges' salaries. The second was that as a matter of public policy, the judges' work constitutes the authentic exposition and interpretation of the law, which is free for publication to all.

**[3]** The first ground was not applicable to the CPT. The copyright system was not significant in *Banks* because judges had no proprietary interest in their opinions. The copyright system was of central importance in this case because AMA authored, owned, maintained, and claimed a copyright in the CPT.

**[4]** The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyright holders was not at stake in *Banks* because judges' salaries provided adequate incentive to write opinions. Copyrightability of the CPT provided the economic incentive for AMA to produce and maintain the CPT. To vitiate copyright in such circumstances could have proved destructive of the copyright interest in encouraging creativity, a matter of significance in this context because of the increasing trend toward state and federal adoption of model codes. Invalidating its copyright on the ground that the CPT entered the public domain would have exposed copyrights of privately authored model codes, statutes, standards, and reference works to invalidation. Organizations that develop these codes and standards warned that they would be unable to continue to do so if they entered the public domain when adopted by a public agency.

**[5]** The second requirement—the due process requirement of free access to the law—may have been relevant, but did not justify termination of AMA's copyright. There was no evidence that anyone wishing to use the CPT had any difficulty obtaining access to it. PMI was not a potential user denied

Case 2:94-cv-03107-DT-GHK   Document 118   Filed 11/01/99   Page 14 of 18   Page ID #:14

access, but a putative copier wishing to share in AMA's statutory monopoly. PMI did not assert that AMA restricted access to users or intended to do so. [6] AMA's right under the Copyright Act to limit or forgo publication of the CPT posed no realistic threat to pubic access. AMA had no incentive to limit or forego publication.

[7] AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system. Although HCFA had nothing to gain from the exclusivity provision, which side urged its inclusion was of no consequence. The controlling fact was that HCFA was prohibited from using any other coding system. What offended the copyright misuse doctrine was not HCFA's decision to use AMA's coding system exclusively, but the limitation on HCFA's right to decide whether or not to use other forms as well.

[8] The terms under which AMA agreed to license use of the CPT to HCFA gave AMA a substantial and unfair advantage over its competitors. AMA used its copyright in a manner violative of the public policy embodied in the grant of a copyright.

[9] A defendant in a copyright infringement suit need not prove an antitrust violation to prevail in a copyright misuse defense. Because PMI did not have to establish an antitrust violation, it was unnecessary to consider AMA's antitrust defenses. [10] Because AMA did not lobby HCFA to adopt the CPT, AMA's First Amendment right to petition the government was not at stake.

---

## COUNSEL

Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, California, for the plaintiff-appellant.

AMA agreed to grant HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. Although HCFA apparently had nothing to gain from inclusion of the exclusivity provision, which side urged its inclusion is of no consequence. *Cf. Anchor Serum Co. v. Federal Trade Comm.*, 217 F.2d 867, 870 (7th Cir. 1954) (rejecting argument that exclusive dealing contract did not violate section 3 of the Clayton Act because buyer initiated negotiations and seller did not impose the contract terms on buyer). The controlling fact is that HCFA is prohibited from using any other coding system by virtue of the binding commitment it made to the AMA to use the AMA's copyrighted material exclusively. The absence of the agreement would not preclude HCFA from doing what the AMA suggests would be proper — deciding on its own to use only the AMA's system. What offends the copyright misuse doctrine is not HCFA's decision to use the AMA's coding system exclusively, but the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well. Conditioning the license on HCFA's promise not to use competitors' products constituted a misuse of the copyright by the AMA.

[8] The adverse effects of the licensing agreement are apparent. The terms under which the AMA agreed to license use of the CPT to HCFA gave the AMA a substantial and unfair advantage over its competitors. By agreeing to license the CPT in this manner, the AMA used its copyright "in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb*, 911 F.2d at 977.

[9] The AMA argues the copyright misuse defense fails because Practice Management did not establish an antitrust violation. We agree with the Fourth Circuit that a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense. *See Lasercomb*, 911 F.2d at 978.

## III.

Practice Management argues that the AMA misused its copyright by negotiating a contract in which HCFA agreed to use the CPT exclusively. *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977-79 (4th Cir. 1990) (defense of copyright misuse "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office"); *see also DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) (same).[9] We have implied in prior decisions that misuse is a defense to copyright infringement. *See Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986). We now adopt that rule.

[7] On the undisputed facts in the record before us, we conclude the AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system. The AMA argues it did not insist HCFA use only the CPT; rather, HCFA decided to use a single code to take advantage of natural efficiencies. However, the plain language of the AMA's licensing agreement requires HCFA to use the AMA's copyrighted coding system and prohibits HCFA from using any other. The exclusivity requirement is a part of the consideration in exchange for which the

---

comparative or better coding systems and lobbying the federal government and private actors to adopt them. It simply prevents wholesale copying of an existing system.

Practice Management did not appeal the district court's finding that the CPT was sufficiently original to qualify for copyright protection, and we do not review that question.

[9]Copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse. *See Lasercomb*, 911 F.2d at 979 n.22.

---

Jack Bierig, Sidley & Austin, Chicago, Illinois, for the defendant-appellee.

Maureen Brodoff, National Fire Protection Association, Quincy, Massachusetts, for the amici.

---

## OPINION

BROWNING, Circuit Judge:

Practice Management Information Corporation ("Practice Management") appeals from a partial summary judgment and preliminary injunction forbidding it from publishing a medical procedure code copyrighted by the American Medical Association ("the AMA").[1]

I.

Over thirty years ago, the AMA began the development of a coding system to enable physicians and others to identify particular medical procedures with precision. These efforts culminated in the publication of the Physician's Current Procedural Terminology ("the CPT"), on which the AMA claims a copyright.

The current edition of the CPT identifies more than six thousand medical procedures and provides a five-digit code and brief description for each. The CPT is divided into six sections — evaluation, anesthesia, surgery, radiology, pathology, and medicine. Within each section, procedures are arranged to enable the user to locate the code number readily. In the anesthesia section, procedures are grouped according to the body part receiving the anesthetic; in the surgical section, the procedures are grouped according to the body system,

---

[1] We have jurisdiction under 28 U.S.C. § 1292(a)(1). *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993).

such as the digestive or urinary system, on which surgery is performed. The AMA revises the CPT each year to reflect new developments in medical procedures.

In 1977, Congress instructed the Health Care Financing Administration ("HCFA") to establish a uniform code for identifying physicians' services for use in completing Medicare and Medicaid claim forms. *See* 42 U.S.C. § 1395w-4(c)(5). Rather than creating a new code, HCFA contracted with the AMA to "adopt and use" the CPT. Agreement ¶ 1. The AMA gave HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. *Id.* ¶ 3(a). In exchange, HCFA agreed "not to use any other system of procedure nomenclature . . . for reporting physicians' services" and to require use of the CPT in programs administered by HCFA, by its agents, and by other agencies whenever possible. *Id.* ¶¶ 1, 2.[2]

HCFA published notices in the Federal Register incorporating the CPT in HCFA's Common Procedure Coding System, *see* 48 Fed. Reg. 16750, 16753 (1983); 50 Fed. Reg. 40895, 40897 (1985), and adopted regulations requiring applicants for Medicaid reimbursement to use the CPT. *See* 42 C.F.R. § 433.112(b)(2) (requiring compliance with Part 11 of the *State Medicaid Manual*, which requires states receiving federal funding for Medicaid to adopt the Administration's Common Procedure Coding System as the exclusive medical procedure coding system).[3]

[2]HCFA had the right to cancel the agreement and use a competing coding system at any time and without penalty on ninety days notice. Agreement ¶ 10.

[3]Other federal agencies require physicians to use the CPT. *See, e.g.,* 20 C.F.R. § 10.411(c) (stating that physicians seeking compensation under the Federal Employees' Compensation Act must identify their services using CPT codes). The state of California has incorporated the CPT into its Code of Regulations. *See* Cal. Code Regs. tit. 22, § 51050.

We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright. While there are indeed policy considerations that support CCC's argument, they are opposed by countervailing considerations. For example, a rule that the adoption of such a reference by a state legislature or administrative body deprived the copyright owner of its property would raise very substantial problems under the Takings Clause of the Constitution. We note also that for generations, state education systems have assigned books under copyright to comply with a mandatory school curriculum. It scarcely extends CCC's argument to require that all such assigned books lose their copyright — as one cannot comply with the legal requirements without using the copyrighted works. Yet we think it unlikely courts would reach this conclusion. Although there is scant authority of CCC's argument, Nimmer's treatise opposes such a suggestion as antithetical to the interests sought to be advanced by the Copyright Act.

*Id.* at 736.

For the reasons we have stated earlier, as well as those relied upon by the First and Second Circuits, we affirm the district court's conclusion that the AMA's copyright in the CPT should be enforced.[6]

[6]Practice Management argues that the CPT is an uncopyrightable industry standard or "idea" under section 102(b) of the Copyright Act, the merger doctrine, and *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523-24 (9th Cir. 1993) because HCFA mandates use of CPT codes in Medicaid applications. This court has not allowed the owners of copyrights in expressions mandated by industry standards to use their copyrights to stifle independent creative expression in the industry. *Sega*, 977 F.2d at 1523-24. However, the AMA's copyright does not stifle independent creative expression in the medical coding industry. It does not prevent Practice Management or the AMA's competitors from developing

*v. Sony Corp. of America.* 659 F.2d 963, 976 (9th Cir. 1982), *rev'd on other grounds,* 464 U.S. 417 (1984).

The Supreme Court has not considered a case in which the author asserted a proprietary interest in material adopted by the government as law. However, the First and Second Circuits have declined to enjoin enforcement of private copyrights in these circumstances.

In *Building Officials & Code Admin. v. Code Technology, Inc.,* 628 F.2d 730 (1st Cir. 1980), the district court preliminarily enjoined Code Technology, Inc. from copying a building code copyrighted by Building Officials & Code Administration ("BOCA"), a private, non-profit group, and adopted by the State. The First Circuit reversed. It recognized the problem posed by *Banks,* but nonetheless refrained from holding BOCA's copyright invalid:

> Groups such as BOCA serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available. Since the rule denying copyright protection to judicial opinions and statutes grew out of a much different set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record, into which testimony and materials shedding light on the policy issues discussed herein may be placed.

*Id.* at 74.

In *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61 (2d Cir. 1994), the Second Circuit declined to invalidate the copyright on a privately prepared listing of automobile values that several states required insurance companies to use in calculating insurance awards:

Practice Management, a publisher and distributor of medical books, purchases copies of the CPT from the AMA for resale. After failing to obtain the volume discount it requested, Practice Management filed this lawsuit seeking a declaratory judgment that the AMA's copyright in the CPT was invalid for two reasons: (1) the CPT became uncopyrightable law when HCFA adopted the regulation mandating use of CPT code numbers in applications for Medicaid reimbursement, and (2) the AMA misused its copyright by entering into the agreement that HCFA would require use of the CPT to the exclusion of any other code. The district court granted partial summary judgment for the AMA and preliminarily enjoined Practice Management from publishing the CPT. Practice Management appeals.

II.

[1] Practice Management's argument that the CPT became law and entered the public domain when HCFA by regulation required its use rests ultimately upon *Banks v. Manchester,* 128 U.S. 244 (1888), which held that judicial opinions are uncopyrightable. *Banks* in turn rests upon two grounds, neither of which would justify invalidation of the AMA's copyright.

[2] The first ground for the *Banks* holding that judicial opinions are not subject to copyright is that the public owns the opinions because it pays the judges' salaries. *Id.* at 253. The second is that as a matter of public policy, "the whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all . . . ." *Id.*

[3] The first ground is clearly not applicable to the CPT. The copyright system was not significant in *Banks* because judges had no proprietary interest in their opinions. The copyright system is of central importance in this case because the

AMA authored, owns, and maintains the CPT and claims a copyright in it.

[4] The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyrightholders was not at stake in *Banks* because judges' salaries provided adequate incentive to write opinions. In contrast, copyrightability of the CPT provides the economic incentive for the AMA to produce and maintain the CPT. "To vitiate copyright, in such circumstances, could, without adequate justification, prove destructive of the copyright interest, in encouraging creativity," a matter of particular significance in this context because of "the increasing trend toward state and federal adoptions of model codes." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.06[C], at 5-92 (1996).[4] As the AMA points out, invalidating its copyright on the ground that the CPT entered the public domain when HCFA required its use would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation.[5] Non-profit organizations that

---

[4] *See also Building Officials & Code Admin. v. Code Tech., Inc.*, 628 F.2d 730, 736 (1st Cir. 1980) (recognizing "a possible trend towards state and federal adoption, either by means of incorporation by reference or otherwise, of model codes"); 58 Fed. Reg. 57643, 57644-45 (1993) (Office of Management and Budget directed federal agencies to adopt private standards "whenever practicable" in order to "eliminate[ ] the costs to the Government of developing its own standards").

[5] *See, e.g.,* 32 C.F.R. § 199.13(e)(2) (limiting payment of dental benefits to procedures defined in the Current Dental Terminology); 32 C.F.R. § 199.2 (conditioning payment of civilian medical benefits for mental disorders on showing the patient has a disorder listed in the *Diagnostic & Statistical Manual of Mental Disorders (DSM III)*); 16 C.F.R. § 1505.5(e) (5) (requiring electrically operated toys to have a type SP-2 electrical power cord, as defined in the National Electrical Code authored by the National Fire Protection Association); 16 C.F.R. § 1201.7 (requiring architectural glazing materials to conform to standards published by the American National Standards Institute); 7 C.F.R. § 1755.870(a)(8) (incorporating by reference Underwriters Laboratories Inc.'s Standard Test for Flame Propagation Height of Electrical and Optical-Fiber Cables Installed Vertically in Shafts); 11th Cir. R. 28-2(j) (requiring attorneys to conform their citations to *The Bluebook: A Uniform System of Citation*).

---

develop these model codes and standards warn they will be unable to continue to do so if the codes and standards enter the public domain when adopted by a public agency.[6]

[5] The second consideration underlying *Banks* — the due process requirement of free access to the law — may be relevant but does not justify termination of the AMA's copyright. There is no evidence that anyone wishing to use the CPT has any difficulty obtaining access to it. *See Texas v. West Publ'g Co.*, 882 F.2d 171, 177 (5th Cir. 1989). Practice Management is not a potential user denied access to the CPT, but a putative copier wishing to share in the AMA's statutory monopoly. Practice Management does not assert the AMA has restricted access to users or intends to do so in the future.

[6] The AMA's right under the Copyright Act to limit or forgo publication of the CPT poses no realistic threat to public access. The AMA has no incentive to limit or forgo publication. If the AMA were to do so, HCFA would no doubt exercise its right to terminate its agreement with the AMA.[7] Other remedies would also be available, including "fair use" and due process defenses for infringers, *see* 1 Nimmer & Nimmer, *supra*, § 5.06[C], at 5-92, and, perhaps most relevant, mandatory licensing at a reasonable royalty could be required in light of the great public injury that would result if adequate access to the CPT were denied. *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988); *Universal City Studios, Inc.*

---

[6] Amicus briefs have been filed by the American Dental Association, American National Standards Institute, American Society of Association Executives, American Society of Heating, Refrigerating & Air-Conditioning Engineers, American Society of Mechanical Engineers, American Society for Testing and Materials, National Fire Protection Association, and Underwriters Laboratories Inc.

[7] Alternatively, HCFA might by regulation or contract require the AMA to provide greater access. *See* H.R. Rep. No. 94-1476, at 59, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5672; Marvin J. Nodiff, *Copyrightability of Works of the Federal and State Governments Under the 1976 Act*, 29 St. Louis L.J. 91, 104 (1984).